IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

UNITED STATES OF AMERICA,

v.                                                          Criminal Case No. 3:24-MJ-46
                                                                                                 Criminal Action No. 3:24-CR-24

DONALD MCDUFFIN WILLIAMS,

        Defendant.

## UNITED STATES' RESPONSE IN OPPOSITION TO MOTION TO DISMISS CRIMINAL COMPLAINT

Comes now the United States of America and William Ihlenfeld, United States Attorney for the Northern District of West Virginia, by Lara K. Omps-Botteicher, Assistant United States Attorney for said District, and files this response in opposition to Defendant Donald McDuffin Williams' *Motion to Dismiss Criminal Complaint*.

On April 25, 2024, a criminal complaint and arrest warrant were issued for Williams due to violations of the Controlled Substances Act, specifically Possession with Intent to Distribute Fentanyl and Distribution of Fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). On May 21, 2024, a grand jury sitting in Martinsburg, within the Northern District of West Virginia, returned a two-count Indictment against Williams in Criminal Action No. 3:24-CR-24 charging him with possess with intent to distribute fentanyl and possess with intent to distribute cocaine base. On June 3, 2024, Williams filed a *pro se* Motion to Dismiss Criminal Complaint and Arrest Warrant. Thereafter, this Court directed the Government to file a response by June 13, 2024 at 4:00 p.m.

1

I. **This Court has subject matter jurisdiction.**

A defendant may make "[a] motion that the court lacks jurisdiction . . . at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). A district court of the United States "shall have original jurisdiction . . . of all offenses against the laws of the United States." *United States v. Eilertson,* 707 F.2d 108, 109 (4th Cir. 1983) (per curiam) (quoting 18 U.S.C. § 3231 (2012)) "Subject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts. That's the beginning and the end of the 'jurisdictional' inquiry." *Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999) (quoted in *United States v. Hartwell*, 448 F.3d 707, 716 (4th Cir. 2006). Here, Williams is charged with violations of federal laws under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Accordingly, the district court has subject matter jurisdiction over this federal criminal prosecution.

II. **The criminal complaint was superseded by the return of an indictment.**

A criminal complaint only authorizes a judge to issue an arrest warrant. Fed. R. Crim. P. 4(a). If, as in this case, an offense carries the possibility of "imprisonment for more than one year," Fed. R. Crim. P. 7(a)(1), it "must be prosecuted by an indictment." *Id*. Furthermore, the transition from arrest upon a criminal complaint to prosecution via indictment must occur rapidly, as it did here. *See* 18 U.S.C. § 3161(b) ("Any . . . indictment charging an individual with the commission of an offense shall be filed within thirty dates from the date on which such individual was arrested . . . ."). In sum, "the [criminal] complaint [wa]s the *temporary* charging document, and [wa]s *superseded* once the more formal charging document [i.e, the indictment, wa]s filed." 1 Charles Alan Wright et al., Federal Practice and Procedure, Crim. § 41 (4th ed. Apr. 2019 update) (emphasis added). *See also United States v. Flick*, No. 1:18CR9, 2019 WL 981642, at *1 (S.D.

Ind. Feb. 28, 2019) (unpublished) ("[T]he [i]ndictment supersedes the complaint."); *United States v. Freund*, No. 08CR1324, 2008 WL 4693245, at *1 n.1 (N.D. Iowa Oct. 24, 2008) (unpublished) ("The [i]ndictment superseded the [c]riminal [c]omplaint."). In this case, because the United States properly superseded the criminal complaint by obtaining an indictment, there is no criminal complaint to dismiss. Therefore, Williams' pro se motion is moot.

### III. Cpl. Kilmer had probable cause to arrest Williams.

Warrantless arrests—and searches incident thereto—are permitted if there is probable cause to believe a felony is being or has been committed by the arrested individual, based upon "the totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). *Accord United States v. Watson*, 423 U.S. 411, 424 (1976) (warrantless arrest permitted if an officer has probable cause to believe felony has been committed, even if committed outside the officer's presence). The Fourth Circuit Court of Appeals explained the probable cause standard as "facts and circumstances within the officer's knowledge [which] would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984); s*ee also Maryland v. Pringle*, 540 U.S. 366, 370 (4th Cir. 2003) (describing probable cause as "a practical, nontechnical conception that deals with the factual and practical considerations of everyday life").

In this case, Deputy Kilmer did not need an arrest warrant to arrest Williams. Through Cpl. Kilmer's investigation, he knew the following:

- There was a March 20, 2023 prior controlled purchase of five suspected fentanyl capsules involving Williams as the drug supplier from the residence of 263 Cool Glen Circle, Harpers Ferry, West Virginia;

3

- On April 8, 2023, at approximately 8:39 a.m., he responded to an overdose call for a victim located at 280 Bluff Lane. Emergency medical services on scene had identified the medical event as a suspected drug overdose. At 9:52 a.m., Cpl. Kilmer was notified by Jefferson Medical Center that the overdose victim was deceased;

- On April 8, 2023, an individual at the victim's residence told officers that the victim had traveled to 263 Cool Glen Circle and purchased drugs from "Don" and that his full name was Donald Williams. The individual provided a description matching Williams. The individual also stated that the victim's phone should have information related to his purchase of drugs from Williams;

- On April 8, 2023, Cpl. Kilmer reviewed the victim's cellular device had a phone call from Don the night prior which was the same time frame as his reported purchase of drugs from Don. The contact number for "Don" was the same number Cpl. Kilmer had previously received as the contact number for "Don";

- The victim's residence had a small plastic bag that appeared to have drug residue in it as well as a small jewelry box that had several small plastic trash cans (small, plastic containers used to store drugs—containing drug residue. Further, the small plastic bag with residue was located by itself lying in front of the toilet in the victim's bathroom; and

- He had received several prior drug complaints regarding 263 Cool Glen Circle.

Based upon the aforementioned information, Cpl. Kilmer had probable cause to conduct a warrantless arrest for distribution of a controlled substance, specifically fentanyl.

Notwithstanding Cpl. Kilmer's ability to conduct a warrantless arrest, Cpl. Kilmer also had an arrest warrant issued by magistrate Athena S. Roper of the Jefferson County Magistrate Court

on April 8, 2023 for delivery of controlled substance resulting in death in violation of West Virginia Code § 60A-04-416(a).  Def. Ex. 5.[1]  Section 60A-04-416(a) provides:

> Any person who knowingly and willfully delivers a controlled substance or counterfeit controlled substance . . . . for an illicit purpose and the use, ingestion or consumption of the controlled substance or counterfeit controlled substance alone or in combination with one or more other controlled substances, proximately causes the death of a person using, ingesting or consuming the controlled substance, is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for a determinate sentence of not less than three nor more than fifteen years.

Based on the aforementioned facts, Cpl. Kilmer had probable cause to believe that Williams distributed a controlled substance that *proximately caused* the death of the victim. Although Williams correctly points out there was no autopsy at this point since the victim had died mere hours prior to the issuance of the arrest warrant, Williams requests evidence that would satisfy a beyond a reasonable doubt standard—not a probable cause standard that is required for the issuance of an arrest warrant.

Cpl. Kilmer will also testify that on April 8, 2023, a search warrant was issued for 263 Cool Glen Circle by magistrate Roper at the same time she issued the arrest warrant. Cpl. Kilmer then traveled to 263 Cool Glen Circle to execute the warrants. According to Cpl. Kilmer's body camera footage, the search team executed the search warrant. A copy of the CAD for the Special Response Team's entry and securing the residence confirms a time of approximately 2:40 p.m. Govt. Ex. 1. While securing the residence, Williams was located and detained. After securing the scene, according to Cpl. Kilmer and confirmed by body camera footage, he informed Williams of

---

[1] Defendant's Exhibit 5 states the arrest warrant was printed at 2:22 p.m. Although that is true, magistrate Roper's office has confirmed that the "printed time" is not the same as the issued time. Therefore, the time provided for when the warrant was "printed" should not be relied upon as the same time as issuance. The printed time is when the document was printed from magistrate Roper's system.

the arrest warrant. Thereafter, Williams was transported from the residence to be processed. As documented on the search warrant, attached as Govt. Ex. 2, it was served at approximately 3:00 p.m. *See* Govt. Ex. 2. Williams inaccurately states that an arrest warrant was executed at 11:30 a.m. as an attempt to search his home without a warrant. Indeed, magistrate Roper issued an arrest warrant for Williams and a search warrant for his residence later in the day that was subsequently executed between 2:40 p.m. and 3:00 p.m. on April 8, 2023. Therefore, Defendant's motion should be denied.

                    Respectfully submitted,

                    WILLIAM IHLENFELD
                    UNITED STATES ATTORNEY

By:   /s/ Lara K. Ompsˍ-Botteicher
       Lara K. Omps-Botteicher
       Assistant United States Attorney
       W. Va. Bar No. 11922
       217 W. King Street, Suite 400
       Martinsburg, WV 25401
       (304) 262-0590

## CERTIFICATE OF SERVICE

I, Lara K. Omps-Botteicher, Assistant United States Attorney for the Northern District of West Virginia, hereby certify that on June 13, 2024, the foregoing *United States' Response in Opposition to Motion to Dismiss Criminal Complaint* was filed with the Clerk of the Court by electronic filing upon the CM/ECF Electronic Filing System. Because Defendant is pro se, the United States separately mailed the response and exhibits to:

Donald McDuffin Williams
ID. No. 1366918
Chesapeake Detention Facility
401 East Madison Street
Baltimore, Maryland 21202

WILLIAM IHLENFELD
UNITED STATES ATTORNEY

By:    /s/ Lara K. Omps-Botteicher
Lara K. Omps-Botteicher
Assistant United States Attorney
W. Va. Bar No. 11922
217 W. King Street, Suite 400
Martinsburg, WV 25401
(304) 262-0590